**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MITCHELL WOJTANEK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 08 C 3080 |
| ) | |
| IAM UNION DISTRICT 8, ) | Judge Rebecca R. Pallmeyer |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mitchell Wojtanek alleges that Defendant District Lodge No. 8 of the International Association of Machinists ("IAM Union District 8" or "the Union") discriminated against him on the basis of his age by refusing to pursue a grievance after Plaintiff was discharged by Consolidated Container Corporation ("Consolidated"). In addition to age discrimination, Wojtanek charges the Union with fraud and conspiracy. The Union seeks summary judgment on these claims and, for the reasons explained here, the motion is granted.

## FACTS[1]

Wojtanek worked as a general maintenance mechanic at Consolidated's Elk Grove Village plant. (Def.'s 56.1 ¶ 2.) Defendant IAM Union District 8 is the union that represents certain Consolidated employees, including Plaintiff. (*Id.* ¶¶ 3, 4.) On August 4, 2006, four and a half years after hiring him, Consolidated discharged Plaintiff, who was then 65 years old. (*Id.* ¶¶ 6, 7.) Although the record does not reveal Consolidated's reason for discharging Plaintiff, Defendant in this case asserts it was based on unsatisfactory work performance (Def's 56.1 Reply ¶ 60); Plaintiff has sued Consolidated, alleging age discrimination and retaliation.[2]

---

[1] The facts are presented in the parties' Local Rule 56 Statements and supporting materials. Disputes are resolved in favor of Plaintiff, the nonmoving party.

[2] *See Wojtanek v. Consolidated Container Co.*, No. 09 C 202 (Mason, M.J.); *Wojtanek v. Consolidated Container Co. LLC*, No. 11 C 790 (Feinerman, J.)

In the case before this court, Plaintiff alleges that Defendant Union refused to file a grievance on his behalf, thereby discriminating against him on the basis of his age. According to Plaintiff, Defendant Union's age-based hostility was demonstrated in April 2006, when Plaintiff called Francisco Javier Zuniga, co-chairman of IAM Union District 8, and asked Zuniga to file a grievance relating to Plaintiff's having been assigned to work alone in the plant over the weekend, a matter Plaintiff believed to be a safety violation. (Wojtanek Aff. ¶ 3, App. 1 to Pl's Resp. to Def.'s Mot. for Summ. J.) Wojtanek claims that Zuniga responded by telling him that at his [Wojtanek's] age, if he were to die, "it would not have been much waste." (*Id.*) Then on July 28, when Consolidated's maintenance supervisor called Plaintiff to a meeting regarding what Plaintiff calls "an incident in the blender room," Zuniga, who was present at the meeting, repeatedly called Plaintiff a liar and told him it was time to retire. (*Id.* ¶ 4.) Plaintiff asked another union member, Rubel Gutierrez, to file a grievance for him, but Gutierrez responded by saying that he was no longer a union official. (*Id.* ¶ 5.)

On Friday, August 4, 2006, when Plaintiff arrived for his third-shift assignment, his supervisor, Digol Jacob, told Plaintiff he had been suspended, but offered no reason for the decision. Plaintiff tried to ask questions, but Jacob told him, "Go home, you're terminated." (*Id.* ¶ 6.) The following Monday, August 7, Plaintiff called the union office, but got no answer (he later learned the union had moved from that office). (*Id.* ¶ 7.) Unable to make contact by phone, Plaintiff faxed a letter to Zuniga, in which he reported that he had been suspended from work and that Supervisor Jacob had harassed and bullied Plaintiff and his co-workers for years. He referred to "age discrimination" in that letter and stated, further, "I am 3 months before retirement. I am treated entirely unlike other [maintenance workers]." (*Id.* ¶ 8, citing Letter from Wojtanek to Zuniga of 8/7/2006, Ex. 1 to Wojtanek Aff.) Zuniga claims he never received that letter. (Zuniga Aff. ¶ 19,

2

Ex. D to Def.'s 56.1.)³ In a phone call later that day, Plaintiff asked that Zuniga file a grievance, but, Plaintiff asserts, Zuniga told Plaintiff he was "finished" and that there was "no more room" for him. (*Id.* ¶ 9.) Plaintiff claims he tried again the next day, calling Zuniga and offering to meet with him at any time and place to prepare the grievance, but Zuniga again refused, observing that because Plaintiff was just a few months from retirement, a grievance would be a waste of time. (*Id.* ¶ 10.)

Then on August 9, 2006, Plaintiff called Zuniga yet again, reminded Zuniga that he was a union member, and demanded that Zuniga represent him. This time, Zuniga agreed to file a grievance, but directed Plaintiff not to call him or Consolidated again. (*Id.* ¶ 11.) Zuniga claims that in this conversation, Plaintiff announced that he had found another job, working as a tool and die maker, and that he did not want to return to work at Consolidated. (Zuniga Aff. ¶ 9, Ex. D to Def.'s 56.1.) Zuniga claims, further, that Pat Whalen of Consolidated's human resources staff confirmed this information. Whalen told Zuniga that Plaintiff had told her that he had found another job, did not want to return to work at Consolidated, and wanted to apply for COBRA health insurance benefits. (*Id.* ¶ 10.) Plaintiff denies making such statements to Zuniga or Whalen; he acknowledges that he called Whalen about insurance coverage on August 15, but claims he told her he was "still waiting" for a grievance hearing and that he said nothing to her about another job or about any plans to resign. (Wojtanek Aff. ¶¶ 12, 15-16.)

In any case, on the advice of Rufus Eskew, the union's Assistant Directing Business Representative, Zuniga did prepare a grievance form on August 9, 2006, requesting that Plaintiff be reinstated. Zuniga printed Plaintiff's name on the form and signed it as union steward. (Zuniga Aff. ¶¶ 11-13.) Following his standard practice, Zuniga wrote "unfair and unjust practice by Management" as the basis for the charge, and added "[m]ore details will be given at the meeting."

---

³ Plaintiff notes that witnesses who offered affidavits in the case were also deposed, and criticizes Defendant's reliance on affidavits rather than deposition transcripts. (Pl.'s Resp. Mem. at 1.) Plaintiff himself has furnished the transcripts, however, and does not suggest that the affidavits are inconsistent with deposition testimony.

(*Id.* ¶ 14; Grievance Record, Ex. 2 to Zuniga Aff.) Plaintiff denies that Zuniga filed a grievance on his behalf (Pl.'s Resp. to Def.'s 56.1 ¶ 7), but the court concludes there is no genuine dispute about this. The only evidence Plaintiff cites in support of his denial is the undisputed fact that Plaintiff himself did not *sign* the grievance; Defendant explains this is because Plaintiff was not at work to do so. (Zuniga Aff. ¶ 13.) Zuniga presented the grievance to Robert Ward, Consolidated Operations Manager, who responded to it by writing, "Denied,– Unsatisfactory Work." (*Id.* ¶¶ 13, 15.) Zuniga reported to the Union Co-Chairman, Rubel Gutierrez, that he had filed the grievance, but had no further involvement with the grievance or with representing Plaintiff. (*Id.* ¶ 16.)

Although he testified at his deposition that he believed the Union should have taken his grievance through every step of the grievance process (Wojtanek Dep. at 60, Ex. 3 to Def.'s 56.1), Plaintiff now admits that the collective bargaining agreement provides that a grievance challenging a discharge may be taken directly to Step Four of the grievance review process. (Pl.'s Resp. to Def.'s 56.1 ¶ 18.) Rufus Eskew, the Assistant Directing Business Representative, was responsible for negotiating collective bargaining agreements and representing the Union in the grievance process. (Def.'s 56.1 ¶ 20.) Eskew recalled that Zuniga told him that Wojtanek intended to accept another job and did not want to return to work for Consolidated, and that Zuniga understood Plaintiff had told Whalen the same thing. (*Id.* ¶¶ 23, 24.) Eskew nevertheless advised Zuniga to file a grievance on Plaintiff's behalf, as it is union policy to do so whenever an employee is discharged or suspended pending discharge. (*Id.* ¶¶ 25, 26; Eskew Aff. ¶ 10, Ex. 1 to Def.'s 56.) After the grievance was filed, Eskew called Mike Ross, the Regional Human Resources Manager for Consolidated, to schedule a fourth step meeting on Plaintiff's grievance. (Def.'s 56.1 ¶ 27.) Ross told Eskew he understood Plaintiff had resigned, but Eskew insisted on proceeding with the grievance. (Eskew Aff. ¶ 14.)

On August 22, Eskew left two messages on Plaintiff's voice mail, directing him to appear for a "hearing meeting" the following day at 9:00 a.m. (Pl.'s Resp. to Def.'s 56.1 ¶ 30.) On his

4

arrival on the morning of August 23, 2006, Plaintiff met with Eskew and Gutierrez for half an hour and showed them copies of a letter he had written to Consolidated the previous day, complaining about Digol Jacob's harassment and bullying. (Wojtanek Aff. ¶ 19; Letter from Wojtanek to Human Resources Manager of 8/22/2006, Ex. 2 to Wojtanek Aff.) Eskew recalls that he reviewed "relevant documents," including disciplinary notices issued to Plaintiff. (Eskew Aff. ¶ 18.) Eskew claims that, as reflected in Eskew's contemporaneous notes, he asked Wojtanek what he wanted from Consolidated, and that Wojtanek initially stated that he wanted only COBRA benefits; at Eskew's own suggestion, Wojtanek added a request that Consolidated agree not to contest his claim for unemployment benefits. (*Id.*; Handwritten notes, Exs. 4 and 5 to Eskew Aff.) Plaintiff denies having made any such statements. (Wojtanek Aff. ¶ 22.) Plaintiff asserts that neither Eskew nor Gutierrez ever showed Plaintiff a copy of the grievance form Zuniga had prepared. (*Id.* ¶ 20.)

Eskew, Gutierrez, and Wojtanek proceeded to the grievance hearing. Ross, who attended with two other management representatives, announced that they understood Plaintiff had resigned. (*Id.* ¶ 21.) Plaintiff claims that for hours, he "strenuously disagreed with Ross," and unsuccessfully sought Eskew's assistance in "help[ing] Ross understand that I neither quit nor resigned my position at Consolidated at any time." (*Id.*) Eskew claims, to the contrary, that he was "fully prepared to discuss Wojtaneik's grievance and to advocate for his return to work," but Wojtanek instead confirmed three times that all he wanted from Consolidated was his COBRA benefits and an agreement not to contest his claim for unemployment compensation benefits. (Eskew Aff. ¶ 20.) After a recess, management representatives returned to present a written severance agreement for Wojtanek to sign. (Pl.'s Resp. to Def.'s 56.1 ¶ 40; Unsigned Agreement, Ex. 3 to Eskew Aff.) The parties agree that Ross read the agreement aloud, and that it provided that Plaintiff would be deemed to have resigned and would be provided with COBRA benefits, and that Consolidated would not contest Plaintiff's claim for unemployment benefits. (Pl.'s Resp. to Def.'s 56.1 ¶ 41.) At Plaintiff's request, the agreement was revised to allow time for Wojtanek to

accept or reject it, and Plaintiff took a copy with him. (*Id.* ¶¶ 42-45.)

The day after the meeting, Plaintiff wrote to Sam Guinan, one of the management representatives who had attended the grievance hearing, complaining that Mr. Ross had "attempt to press on several time to get an idea in to my head that I quit the job" and had offered him an "unfair severance agreement." (Wojtanek Aff. ¶ 27; Letter from Wojtanek to Guinan of 8/24/2006, Ex. 3 to Wojtanek Aff.) Wojtanek asserts that on August 25, Eskew called Wojtanek and offered to assist him in finding work at a "Japanese company." When Wojtanek responded by asking whether Eskew believed Plaintiff had been fired because of his age, he claims that Eskew hung up. (Wojtanek Aff. ¶ 28.) Eskew denies such a conversation occurred. (Eskew Dep. at 120-21, Ex. 3 to Pl.'s Resp. to Def.'s 56.1.) According to Defendant, neither Eskew nor any other union official had any contact with Wojtanek after the August 23 meeting until the following January, when Eskew learned that Wojtanek had filed a charge of discrimination against the union. (Def.'s 56.1 ¶ 46.)

Eskew had never seen Plaintiff before August 23, 2006, the day of the grievance hearing, and he asserts that he did not know Wojtanek's age. (Eskew Aff. ¶ 26.) Plaintiff disputes this, but the only evidence he cites is a letter he claims he wrote on August 9, 2006, in which he complained about Supervisor Jacob's harsh treatment of Plaintiff and his co-workers and commented, "I am 3 months before retirement." (Letter from Wojtanek to Eskew of 8/9/2006, Ex. 4 to Wojtanek Aff.) Although there are disputes about what happened at the grievance hearing, there is no evidence that Eskew took Wojtanek's age into account in connection with the grievance, and Eskew denies having done so. (Eskew Aff. ¶ 31.) The involvement of other union stewards (Jerlena Brown, Francisco Zuniga, and Rubel Gutierrez) in the grievance was essentially ministerial: Brown received a copy of a disciplinary notice and passed it along to Zuniga; Zuniga wrote out the grievance and gave it to management; and Gutierrez attended the grievance hearing but made no decisions or recommendations at that proceeding. (Pl.'s Resp. to Def.'s 56.1 ¶¶ 51-54.)

Although Plaintiff insists he never expressed plans to resign from his position at

6

Consolidated, it is undisputed that he was offered a position as a tool and die maker at Pactiv Corporation and accepted that job offer, in writing, on August 17, 2006. (*Id.* ¶¶ 57, 58.) Plaintiff began work for Pactiv on September 1, 2006, and remained employed there until November 17, 2006, when he was terminated during his probationary period for slow work performance. (*Id.* ¶ 60.)[4] He did not file his charge of discrimination in this case until after his termination from Pactiv. (*Id.* ¶ 61.)

Plaintiff cites circumstantial evidence of age discrimination, but it has little weight. He identifies four management-level employees who were promoted or transferred and then replaced by younger workers (Wojtanek Dep. at 17-20), but the court sees no reason to believe this reflects unfair treatment. The union does not represent management-level employees. Plaintiff claims the union represented three bargaining unit employees who had worse records than he had, and that some younger employees were disciplined but retained their jobs. He admitted, however, that he has no information concerning the alleged misconduct, the employees' prior disciplinary records, or the extent of the Union's representation of them. (*Id.* at 54-56.) His assertion that the union failed to communicate with him (*id.* at 52-54, 78) is belied by the history described above.

Plaintiff's evidence that the union retaliated against him for complaints of age discrimination is also thin: Although Wojtanek mentioned age discrimination in his August 7, 2006 letter to Zuniga, Zuniga claims he never saw that letter before Plaintiff filed his charge of discrimination, and Plaintiff offers no evidence that calls that assertion into question. And, although Plaintiff complained about his supervisor's harshness and bullying, there is no evidence of any complaint of age discrimination that pre-dated Plaintiff's charge. In any event, Plaintiff has not explained how complaints of age

---

[4] Plaintiff's employment with Pactiv has also generated litigation. Plaintiff has sued Pactiv for age discrimination. *See Wojtanek v. Pactiv Corp.*, No. 09 C 6551 (Norgle, J.). He sued Defendant Union, as well, but Judge Lefkow dismissed that case on the basis that because Plaintiff was a probationary employee, the Union had no obligation to represent Plaintiff in his dispute with Pactiv. *See Wojtanek v. District Lodge No. 8 of the International Ass'n of Machinists and Aerospace Workers, AFL-CIO*, No. 08 C 7074, 2011 WL 248495 (N.D. Ill. Jan. 25, 2011).

discrimination by Consolidated managers would have antagonized the Union. Finally, Plaintiff has alleged fraud and conspiracy, but the only evidence he cites for these claims is the fact that neither the union nor Consolidated has contacted him since his discharge.

**DISCUSSION**

Defendant Union seeks summary judgment on all of Wojtanek's claims. Summary judgment is appropriate where the materials on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). When ruling on a summary judgment motion, the court credits all admissible evidence presented by the nonmoving party and draws all justifiable inferences in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court does not assess the credibility of witnesses or weigh evidence, *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005), and will not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Still, "once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoting FED. R. CIV. P. 56(e)). No genuine issue exists "if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find [for the opposing party]." *Anderson*, 477 U.S. at 254.

### A. Age Discrimination

Section 623(c)(1) of the ADEA provides that "[i]t shall be unlawful for a labor organization . . . to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his age . . . ." 29 U.S.C. § 623(c)(1). In *Gross v. FBL Financial Services, Inc.*, the Supreme Court held that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause" of the challenged

action. 129 S. Ct. 2343, 2352 (2009); *see also Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 455 (7th Cir. 2009) (explaining that the Supreme Court's holding in *Gross* demonstrates that, for an ADEA plaintiff, "it's not enough to show that age was *a* motivating factor. The plaintiff must prove that, but for his age, the adverse action would not have occurred.")

A plaintiff suing under the ADEA may prove discrimination on the part of the defendant through either a direct method or an indirect method. *Martino*, 574 F.3d at 452. To show discrimination indirectly, a plaintiff utilizes the approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[5] *Martino*, 574 F.3d at 452 (explaining that because both methods of proving discrimination allow the use of circumstantial evidence, "the distinction is often fleeting"). Regardless of which method the plaintiff chooses to utilize, "the bottom-line question is whether the plaintiff has proved intentional discrimination." *Id.*

The court concludes that Wojtanek's case does not survive summary judgment under either method. To prevail under the direct method, Wojtanek must offer direct or circumstantial evidence that Defendant refused to represent him and that the decision was motivated by his age. *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008). But the Union did not in fact fail to represent Plaintiff. To the contrary, Zuniga, acting on behalf of the Union

---

[5] The Supreme Court's recent decision in *Gross v. FBL Financial Services, Inc.* casts doubt on whether the *McDonnell Douglas* test still applies to ADEA claims. *See Gross*, 129 S. Ct. at 2348, n.2 (explaining that "Title VII is materially different" than the ADEA, and noting that "the Court has not definitely decided whether the [*McDonnell Douglas*] evidentiary framework . . . utilized in Title VII cases is appropriate in the ADEA context."). Nevertheless, by citing ADEA cases that utilize the *McDonnell Douglas* test as authoritative support, the *Gross* Court impliedly authorizes continued use of the test. *See id.* at 2355 (Stevens, J., dissenting) (explaining that the majority opinion in *Gross* cites both *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993) and *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), non-mixed-motive ADEA cases that utilize the *McDonnell Douglas* test, in support of its holding). The Seventh Circuit has also endorsed use of the *McDonnell Douglas* test post-*Gross*. *See Martino*, 574 F.3d at 452 (utilizing the *McDonnell Douglas* standard nearly a month after the Supreme Court decided *Gross*). For purposes of this decision, the court assumes that the test it is still valid and is applicable in the case at bar.

and at the direction of Eskew, did file the standard form grievance against Consolidated on Wojtanek's behalf. (Def.'s 56.1 ¶ 25.) After Zuniga filed the grievance, Eskew contacted Wojtanek to discuss the relief that Wojtanek wanted to obtain. (*Id.* at ¶ 34.) He also scheduled a meeting with Consolidated for review of Wojtanek's grievance, met with Wojtanek before the hearing, and then attended that meeting with Wojtanek. Wojtanek now claims that Eskew was not aggressive in negotiating for his return to work, and Eskew essentially agrees; Eskew explains that he did not press for reinstatement because he understood Wojtanek did not want it. That the Union filed the grievance and that Eskew represented Wojtanek in that grievance is undisputed, however.

At the conclusion of the grievance proceeding, the parties negotiated a written agreement, and Wojtanek was given a copy of the Agreement to review before signing. (*Id.* at ¶ 40.) There is no evidence that the Union made any effort to follow up with Wojtanek to determine if the Agreement was satisfactory to him, but this does not constitute a failure to represent him. For his part, Wojtanek never contacted the Union to follow up, likely due to the fact that he had obtained alternate employment. Reviewing the record as a whole, the evidence is simply not consistent with Wojtanek's claim that the Union failed to represent him.

Secondly, even assuming that Wojtanek did present evidence that the Union's representation was inadequate, Wojtanek has not established that this was because of his age. Wojtanek points to statements allegedly made by Francisco Zuniga to the effect that the Union would not assist him because he "was only months away from retirement." (Compl. at 4.) The court acknowledges that a reference to imminent retirement may reflect age-related bias. *Kaniff v. Allstate Ins. Co.*, 121 F.3d 258 (7th Cir. 1997) (repeated references to retirement may permit inference of age discrimination). Zuniga's alleged statements, without more, are nevertheless insufficient to establish that the Union violated Wojtanek's rights. Zuniga was not a decisionmaker concerning the Union's activities. Thus, Zuniga's alleged comments are relevant only if Zuniga's discriminatory animus was intended to cause an adverse action and was a proximate cause of the

adverse action. *Staub v. Proctor Hospital*, 131 S.Ct. 1186, 1194 (2011) (considering a claim under the Uniformed Services Employment and Reemployment Rights Act, where plaintiff need only show that discrimination was "a motivating factor" in the adverse action). Plaintiff has presented evidence of comments reflecting discriminatory animus on Zuniga's part, but there is no basis in this record for a finding that Zuniga's animus was a proximate cause, let alone the "but for" cause in any adverse action. As explained, Zuniga's doubts about whether a grievance was appropriate at all were overruled by Eskew. After filing the generic grievance form, Zuniga had nothing further to do with Wojtanek's grievance. It was Eskew who called Plaintiff, met with him in advance of the grievance hearing, and represented him at that hearing. What happened at the hearing is disputed, but there is no evidence that Eskew's purportedly mistaken view of Plaintiff's intentions was the product of his communications with Zuniga, or that Zuniga exercised any control over the grievance process. A reasonable jury could not find in favor of Wojtanek under the direct method of proof.

Nor could a reasonable jury find for Wojtanek under the indirect method. In order to establish a *prima facie* case of age discrimination under the indirect method, Wojtanek must present evidence that (1) he is a member of a protected class; (2) he was entitled to assistance from the Union by way of representation in the grievance proceeding; (3) despite his right to such Union assistance, the Union failed to represent him; and (4) the Union treated similarly situated younger employees more favorably. *See Martino*, 574 F.3d. at 453 (laying out similar criteria for a disparate treatment claim under the ADEA against an employer). If Wojtanek were to establish a *prima facie* case, the Union could offer a nondiscriminatory explanation for its conduct. *See id.* In that event, Wojtanek could survive summary judgment by "challeng[ing] the stated reason"—that is, by showing that the Union's proffered explanation is "a lie, specifically a phony reason" for the discriminatory action. *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). Again, however, the ultimate burden to prove intentional discrimination always remains with Wojtanek, and, in the wake of *Gross v. FBL Financial Services, Inc.*, Plaintiff must demonstrate "that age was the 'but-for'

cause of the challenged adverse employment action." 129 S. Ct. at 2351.

There is no dispute that Wojtanek is a member of the protected class or that he was entitled to assistance from the Union by way of representation. Wojtanek cannot make out the third and fourth prongs of a *prima facie* case, however. A reasonable jury could find neither that the Union failed to represent Wojtanek nor that the company treated younger workers any better. For the reasons already explained, Wojtanek has failed to prove that the Union did not represent him; Eskew did in fact (1) direct the filing of Wojtanek's grievance, (2) schedule a Fourth Step meeting, (3) meet with Wojtanek prior to the meeting, and (4) appear at the meeting on Wojtanek's behalf. (Def.'s 56.1 ¶¶ 25, 29, 32, 34.) The parties disagree about what happened at the grievance hearing: Wojtanek insists he wanted to return to work, while Eskew maintains—consistent with Eskew's own contemporaneous notes, and with the fact that Wojtanek had landed a new job—that Wojtanek sought only his COBRA benefits and an agreement not to contest a claim for unemployment benefits.

Even assuming that Wojtanek's version is accurate, the court notes that he has not presented any evidence that younger workers were treated more favorably. When specifically questioned "What younger person was represented [by the Union]?" at his deposition, Wojtanek responded, "I cannot recall names of those people because I don't know those people on production by name." (Wojtanek Dep. at 15.) Furthermore, when asked, "So your evidence [of age discrimination] is that some unknown production people injured themselves and continued working; is that right?," Wojtanek replied with a "Yes, sir." (*Id.*) This is not sufficient evidence that any similarly-situated younger workers were treated more favorably. Workers to whom Plaintiff compares himself must be similar in all material respects. Thus, when challenging an employer's disciplinary decisions, a plaintiff seeking to prove discrimination must show that the more favorably treated co-workers "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would

distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000); *see also Ellis v. United Parcel Service, Inc.*, 523 F.3d 823, 826 (7th Cir. 2008). Plaintiff here has presented no evidence of any younger worker in circumstances similar to his who received more aggressive or effective representation from Defendant Union. The court concludes Plaintiff has not presented evidence of intentional discrimination under the ADEA, and the Union is entitled to judgment as a matter of law on this claim.

**B.     Fraud and Conspiracy**

Having disposed of Plaintiff's federal claim, the court need not address his common law fraud and conspiracy allegations, but exercises its discretion to do so as the issues are fully briefed. To establish a cause of action for fraud, the plaintiff must show that

> statements of material facts were made; defendants must have known or believed such statements to be untrue; plaintiffs had a right to rely or were justified in relying upon those statements; the statements were made for the purpose of inducing plaintiffs to act or rely upon them; plaintiffs were damaged as a result of their reliance upon said statements.

*Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 309, 773 N.E.2d 84, 92 (1st Dist. 2002) (citations omitted).

The elements of civil conspiracy are: "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill. 2d 302, 317, 807 N.E.2d 461, 470 (Ill. 2004) (citing *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 62-63, 645 N.E.2d 888, 894 (Ill. 1994)). In the case at bar, Wojtanek has presented no evidence of fraud or conspiracy. During his deposition, opposing counsel specifically asked Wojtanek about the fraud and conspiracy claims he asserted in his original charge with the Illinois Department of Human Rights. (Wojtanek Dep. 39.) In response, Wojtanek stated, "I recognize [sic] the Union just abandoned [me.] I pay my Union dues and fees and they did not recognize me." (*Id.*) In a further attempt to clarify, opposing counsel

13

stated "getting back to . . . fraud and conspiracy, so when you say fraud and conspiracy, that is you are referring to the fact that neither the company nor the Union contacted you?" (*Id.* at 40.) Wojtanek replied, "yes." (*Id.* at 40.) The Union's and employer's failure to contact Plaintiff is not a basis for a claim of fraud or conspiracy. These claims are dismissed.

## **CONCLUSION**

Defendant's motion for summary judgment [37] is granted. Defendant's motion to strike [56] is stricken as moot. Plaintiff's motion "to expose Defendant's Disclosures Concealed" [42] is denied, as Plaintiff was free to present any evidence he believed relevant in response to the motion for summary judgment.

ENTER:

Dated: March 17, 2011

REBECCA R. PALLMEYER
United States District Judge